IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

AMY L. STONE o/b/o                                            CLAIMANT
WILLIAM BART COLE, Deceased

       V.                       Civil No. 2:22-cv-02123-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,                    DEFENDANT
Social Security Administration

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

Plaintiff, Amy Stone, brings this action on behalf of the now deceased Claimant, William Bart Cole, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.     Procedural Background

Cole protectively filed his application for DIB on March 15, 2018[1], alleging disability since September 11, 2014, due to anxiety, depression, post-traumatic stress disorder ("PTSD"), anger issues, allergies, skin problems, and pain. (ECF No. 11, pp. 74, 92, 113-126, 259-262, 295, 312-313). Born on May 26, 1969, he was 50 years old on his date last insured ("DLI") and possessed the equivalent of a high school education. (*Id*. at 29, 296). Cole had past relevant work ("PRW") experience as a diesel mechanic helper, welding machine tender, and truck driver helper during the 15 years preceding his alleged onset date. (*Id*. at 28, 296, 322-329).

---

[1] Plaintiff had filed a prior application for supplemental security income in November 2014, resulting in a final unfavorable administrative decision on January 27, 2016. (ECF No. 11, pp. 56-66).

1

Following an administrative hearing in June 2019, Administrative Law Judge ("ALJ"), Hon. Elisabeth McGee entered an unfavorable decision on December 9, 2019. (ECF No. 11, pp. 17-29; ECF No. 11-1, pp. 3-42). She determined his DLI to be December 31, 2019. (*Id*. at 19). In August 2020, the Appeals Council remanded the case for further consideration of Cole's mental impairments and obesity. (*Id*. at 132-134). Sadly, he passed away the following month.[2] ALJ McGee held a remand hearing telephonically on December 7, 2020. (*Id*. at 38-52).

On May 21, 2021, ALJ McGee identified Cole's degenerative joint disease ("DJD") and osteoarthritis of the bilateral hands, chronic pain, depression, bipolar disorder, panic disorder, personality disorder, intermittent explosive disorder, PTSD, and obesity as severe impairments, but she determined he did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 11, p. 20). Despite his impairments, the ALJ found Cole retained the residual functional capacity ("RFC") to perform light work, except he could only perform work with simple, routine, and repetitive tasks with few variables; little judgment; simple, direct, and concrete supervision; and social interaction incidental to the work performed. (*Id*. at 22). With the assistance of a vocational expert ("VE"), ALJ McGee ultimately decided he could perform work as a housekeeper, packing line worker, and meat processor. (*Id*. at 29).

The Appeals Council denied Plaintiff's request for review on June 3, 2022. (ECF No. 11, pp. 6-10). She subsequently filed this action on July 29, 2022. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 13, 15), and the matter is ready for Report and Recommendation.

---

[2] Cole passed away due to lobar pneumonia on September 27, 2020, after the Appeals Council remanded his case and before the ALJ held the second hearing. (ECF No. 11, pp. 282, 887-888). Records indicate that he had methamphetamine in his system at the time of death with obesity and cardiomegaly also listed as contributing factors. Upon his death, Plaintiff, the mother of Cole's minor daughter, was appointed as the child's guardian and substituted as a party on the child's behalf. (*Id*. at 283-286).

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A Claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Claimant must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the Claimant has engaged in substantial

3

gainful activity since filing his claim; (2) whether the Claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the Claimant from doing past relevant work; and, (5) whether the Claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only considers Claimant's age, education, and work experience in the light of his RFC if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

### III.   Discussion

The Plaintiff raises three issues on appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ conducted a proper subjective complaint analysis; and (3), whether there is substantial evidence to support the ALJ's RFC determination.

#### A.   Record Development

In her first issue, the Plaintiff contends that the ALJ failed to develop the record by ordering additional consultative examinations and obtaining opinion evidence addressing each of the impairments she found to be severe, namely Cole's bipolar disorder, personality disorder, intermittent explosive disorder, PTSD, and osteoarthritis of the hands. The ALJ does owe a duty to a Claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the Claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to [her] do not give sufficient medical

4

evidence to determine whether the [C]laimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

Further, while the RFC determination must be supported by some medical evidence, it is ultimately an administrative determination reserved to the Commissioner. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). Thus, there is no requirement that the ALJ rely on actual RFC assessments or opinions from a particular source. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (there is no requirement that RFC finding be supported by specific medical opinion); *Stormo*, 377 F.3d at 806 (ALJ did not fail to fully develop record, as no crucial issue was undeveloped, and examining physicians provided clinical data and observations about claimant's limitations).

In the present case, the transcript contains approximately 400 pages of medical records spanning from 2011 until 2020. This evidence includes records of hospitalization, medication management, and individual therapy for a variety of mental impairments to include mood disorder, bipolar I disorder, major depressive disorder ("MDD"), generalized anxiety disorder, methamphetamine dependence, PTSD, and intermittent explosive disorder. (ECF No. 11, pp. 479-480, 482-483, 506-515, 526-710, 734-757, 809-817, 830-883). Medications including Ritalin, Lithium, Abilify, Effexor, Zoloft, Citalopram, Effexor, Lexapro, Haloperidol, Tegretol, Lamictal, and Carbamazepine, along with psychotherapy were prescribed to control his symptoms.

The record contains no evidence of hospitalization during the relevant period. He was, however, hospitalized for one month in 2011 due to suicidal ideation, homicidal threats, and physical aggression. (ECF No. 11, pp. 816-817). His diagnoses included mood disorder, likely MDD, and methamphetamine dependence. And, in 2013, Cole was twice treated for injuries sustained in physical altercations. (*Id*. at 796-808).

A more in-depth review of the records dated during the relevant period reveals that Cole received outpatient treatment for mood disorder, generalized anxiety disorder, panic disorder, MDD, and bipolar I disorder from DaySpring Behavioral Health between his alleged onset date, September 11, 2014, and October 2018, when the facility closed its doors. (ECF No. 11, pp. 526-723, 742-757). His symptoms included depression, social anxiety, anger control issues, lack of motivation to perform tasks, and introversion. It appears that at least some of his symptoms stemmed from unresolved issues with his father who passed away while in prison; a volatile relationship with his significant other; and substance abuse.

Dr. John McCauley prescribed Zoloft in March 2016 to treat his MDD, and records from the following month reveal that Cole's depression had improved. (ECF No. 11, pp. 479-480, 482-483). In May, Dr. McCauley refused to increase Cole's Xanax dosage. (*Id*. at 472-474). And, in August, Cole reported that therapy was beneficial. (*Id*. at 678-681). Continued improvement in his ability to manage his anger when dealing with his significant other was reported on May 24, 2017. (*Id*. at 621-622). In October 2017, Cole told his therapist that medications helped manage his anger, mood, and irritability. (*Id*. at 587-588). At that time, he also requested that the dosage on his antidepressant be increased. (*Id*. at 589-590).

In June 2017, Cole's anxiety had improved as he was utilizing the coping skills he had learned in therapy to calm himself down. (ECF No. 11, pp. 611-618). Although he continued to struggle with his partner's behavior, he was able to better control his temper. And, in November 2017, Cole reported continued improvement in the relationship with his partner. (*Id*. at 585-586).

Despite a recent increase in depressive symptoms, Cole presented with an improved mood in February 2018. (ECF No. 11, pp. 563-564). Six months later, licensed professional counselor, Holli Shelton documented continued improvement. (*Id*. at 530-531).

In December 2018, after DaySpring closed, Cole began mental health treatment at Pinnacle Point for diagnoses of bipolar I disorder, anxiety disorder, intermittent explosive disorder, and PTSD. (ECF No. 11, pp. 809-815). Overall, however, his symptoms remained the same with slight progress noted. (*Id*. at 734-736, 838-846, 857-859, 860-872). Dr. John McAuley increased his Alprazolam and Lamotrigine prescriptions in January 2019, as Cole worked to get established at Pinnacle Point. (*Id*. at 734-736). And Cole continued to work on identifying and processing triggers for his aggressive behavior. (*Id*. at 734-736, 838-846, 857-859, 860-872).

Dr. Don Ott conducted a consultative psychiatric evaluation on June 20, 2018. (ECF No. 11, pp. 506-515). Cole indicated that he applied for disability due to issues with anger, social anxiety, and depression. He reported a hospitalization in 2013, after threatening his partner with a gun, as well as a 16-year history of sporadic outpatient treatment. Cole also admitted to a history of drug abuse including both street drugs and Hydrocodone. And despite reporting difficulty getting along with others, including authority figures on his adult function report, he advised Dr. Ott that he did not have a major conflict with others. (*Id*. at 318-322). He did, however, report having limited social contact. Although his fund of knowledge was found to be limited, his verbal skills were satisfactory. Dr. Ott documented a depressed and anxious mood, evidence of grogginess caused by his medication, intact cognitive processes, rational and goal-directed thoughts, intact memory, a lack of focus, no specific limitations in the areas of persistence or pace, the ability to manage funds without assistance, and no loss of contact with reality. He diagnosed Cole with schizoid personality disorder and assigned a global assessment of functioning score of 60-70, indicative of mild to moderate impairment. *See* Diagnostic and Statistical Manual of Mental Disorders IV-TR 34 (4th ed. 2000).[3]

---

[3] However, "GAF scores have no direct correlation to the severity standard used by the Commissioner." *Wright v. Colvin*, 789 F.3d 847 (8th Cir. 2015) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

Seven days later, Dr. Laurie Clemens reviewed the record and concluded Cole's mental impairments would result in moderate limitations in the following areas: interacting appropriately with the public, accepting instructions, responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in work setting. (ECF No. 11, pp. 81-87).

On July 17, 2018, Dr. Michael Westbrook conducted a general physical exam and acknowledged Cole's diagnosis of depression, noting it to be stable with treatment. (ECF No. 11, pp. 519-523). He assessed only mild physical limitations with no mention of mental restrictions.

Dr. Elizabeth Bucolo conducted an independent review of the record on September 14, 2018, and ultimately affirmed Dr. Clemens' mental RFC. (ECF No. 11, pp. 100-106).

In May 2019, Counselor Shelton again noted some progress toward Cole's treatment goals. (ECF No. 11, pp. 830-837). He indicated that the police suspected him of stealing a lawnmower and golf cart because he was able to help them find the items. Cole maintained his innocence but indicated that he knew who was responsible for the theft.

On July 10, 2019, Cole reported improvement in his anger outbursts, reporting approximately three outbursts per week. (ECF No. 11, pp. 844-846). He had been able to maintain his composure when a guy "came at him."

The following day, Dr. Kelsy McClellan at Pinnacle Pointe conducted a psychological assessment of Cole, noting an anxious mood, congruent affect, cooperative interaction, intact thought processes, good judgment and insight, fair attention and concentration, and no evidence of delusions. (ECF No. 11, pp. 847-856).

On August 7, 2019, Cole reported getting out more and visiting a friend who was paralyzed and could not leave his home. (ECF No. 11, pp. 867-869). Similar findings were noted the

following day.  (*Id*. at 860-866).  Dr. McClellan noted a depressed and anxious mood, appropriate appearance, good judgment/insight, and intact attention and concentration with a withdrawn demeanor and avoidant eye contact.

After reviewing this evidence, we find that the record contains ample evidence upon which the ALJ could base his decision.  "'[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'"  *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

As posited by the Plaintiff, the most recent RFC assessments and consultative exams were completed between June and September 2018.  (ECF No. 11, pp. 81-87, 11-106, 506-515, 519-523).  And we note that the relevant period in this case extends from September 11, 2014, Plaintiff's alleged onset date, through December 31, 2019, his date last insured.  *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (to be entitled to benefits, the claimant must prove that he was disabled before his insurance expired).  They clearly relate to the Plaintiff's condition during the relevant period.  Thus, given that there is no indication that the Plaintiff's condition worsened after these assessments were completed, the fact that the ALJ did not issue a final decision until May 2021 has no bearing on their overall validity.

The Plaintiff also asserts that ALJ failed to develop the record regarding Cole's manipulative limitations after concluding that his osteoarthritis of the hands was a severe impairment.  We disagree.  The record contains no evidence that any such manipulative limitations were assessed by any of Cole's physicians during the relevant period.  *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (relevant that none of claimant's providers offered an opinion that he was disabled or made any statement/recommendation that he was unable to work); *Raney*

*v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (similar); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (no functional restrictions on activities is inconsistent with claim of disability). And, contrary to the Plaintiff's contention that the RFC contained no restrictions related to Cole's hand impairment, the ALJ limited him to light work which involves lifting and carrying 10 pounds frequently and 20 pounds occasionally.

Cole was involved in a four-wheeler (ATV) accident in March 2016. (ECF No. 11, pp. 758-762, 828-829). After allegedly going over the handlebars, he complained of pain in his right arm, ribs, and buttocks, and well as both elbows. Thereafter, Cole reported a 30 to 75 percent improvement in pain with chiropractic treatment. (*Id*. at 818-827).

He began complaining of CTS symptoms in June 2016. (ECF No. 11, pp. 466-467). In December 2016, Dr. McCauley injected his left thumb after noting pain and swelling at its base. (*Id*. at 452-454). Thereafter, Cole reported pain relief. Due to recurrent swelling, tenderness, and poor use of his left thumb, the doctor referred Cole to an orthopedic surgeon, Dr. Rolando Cheng, in October 2017 for further treatment. (*Id.* at 456-448). Notably, there is no evidence Cole followed through with this referral. And the record contains only a few additional references to his thumb/hand pain. *See Whitman*, 762 F.3d at 706 (ALJ can consider claimant's failure to follow prescribed treatment or seek medical attention).

As previously mentioned, Dr. Westbrook conducted a consultative physical exam in July 2018. (ECF No. 11, pp. 519-523). Although he exhibited a diminished range of motion in the right metacarpophalangeal ("MP") joint (60/90 degrees), Cole had normal grip strength in both hands and a normal range of motion in the shoulders, elbows, wrists, left hand, hips, knees, ankles, cervical spine, and lumbar spine with no evidence of muscle spasm, weakness, or atrophy. Further, x-rays showed only mild DJD in the left thumb and carpal bones of both hands. Cole was able to

perform all limb function tests including holding a pen and writing, touching his fingertips to his palm, opposing thumb to fingers, and picking up a coin. Accordingly, Dr. Westbrook assessed only mild limitations in the ability to sit, stand, walk, lift, carry, handle, and finger.

In August 2018, Dr. Alice Davidson reviewed the evidence of record and determined Cole could perform a full range of light work. (ECF No. 11, pp. 84-85). And, on September 14, 2018, Dr. William Harrison agreed with Dr. Davidson's findings. (ECF No. 11, pp. 103-104).

Accordingly, we find ample evidence upon which the ALJ could base her conclusion that Cole could perform light work with mental restrictions. And, given Cole's death in September 2020, remand for additional evaluations at this point would be futile.

Further, because the Plaintiff has failed to provide the Court with evidence as to what the additional examinations might have shown, had they been conducted, we can find no harm resulting from the ALJ's failure to order additional exams. Therefore, no additional exams or assessments were required.

### B. Subjective Complaints

The Plaintiff also maintains that the ALJ's reasons for discounting Cole's subjective complaints of pain and mental limitations are not clear, beyond a finding that they were not supported by the objective medical evidence. The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including: (1) the Claimant's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5), his functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the observations made by third parties and the opinions of treating and examining physicians. *Id*.

11

An ALJ may not discount the Claimant's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (citing *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Contrary to the Plaintiff's argument, the ALJ properly considered Cole's subjective complaints. As detailed above, the ALJ properly concluded that the objective medical evidence did not support a finding of disability. *See* 20 C.F.R § 404.1529(c)(2) (objective evidence medical is a "useful indicator" in evaluating subjective symptoms). In addition, she pointed out that none of Cole's treatment providers imposed any work-related restrictions. *See Depover*, 349 F.3d at 567 (relevant that none of claimant's providers offered an opinion that he was disabled or made any statement/recommendation that he was unable to work); *Raney*, 396 F.3d at 1010 (similar); *Hensley*, 352 F.3d at 357 (no functional restrictions on activities inconsistent with claim of disability).

The ALJ also considered Cole's activities, namely his own reports that he could care for his personal needs; shop in stores for groceries, albeit it late at night; drive; go out alone; mow the yard using a riding mower; follow written instructions; and handle his finances. *See* 20 C.F.R § 404.1529(c)(3)(i) (ALJ can consider daily activities in subjective symptom evaluation). Similarly, the ALJ noted that the Plaintiff was able to hunt, operate a four-wheeler, and do yard work in 2016; work on vehicles with others in April 2017; work on a small boat in June 2018, and fish and work on trucks in December 2018. (*Id*. at 462-463, 627-628, 658-659, 674-681, 694-697, 760, 764-769, 809-815). These activities all require some manipulative ability and provide support for the ALJ's

physical RFC determination. *See Lynch v. Astrue*, 687 F. Supp. 2d 841, 865 (N.D. Iowa 2010) (ALJ entitled to consider activities claimant performed, despite her alleged manipulative limitations). Working on vehicles with others also demonstrates an ability to work in proximity to others.

Further, the ALJ noted that Cole's pain was well-controlled, and the medications prescribed to treat his mental impairments were relatively effective in improving his symptoms. Although he alleged various side effects from his medications, including drowsiness, the record indicates that those side effects were generally mild, as Cole did not complain about them to his medical providers. *See* 20 C.F.R §§ 404.1529(c)(3)(iv), 404.1529(c)(3)(v) (ALJ can consider type, dosage, effectiveness, and side effects of medication, as well as treatment other than medication taken for relief of pain or other symptoms). And the only signs of grogginess noted in the record were documented by Dr. Ott during a one-time consultative exam.

Accordingly, the record clearly demonstrates that the ALJ conducted a proper subjective complaint analysis.

## C. RFC Determination

Next, the Plaintiff revives her argument concerning the ALJ's treatment of the objective medical evidence, arguing that the limited range of light RFC accounts for Cole's non-severe DDD of the lumbar spine but not his mental impairments, the DJD/osteoarthritis of his hands, or his obesity. She contends this constitutes error because all three of the Dictionary of Occupational Titles ("DOT") titles provided by the vocational expert contain manipulative requirements. *See* DOT § 323.687-014 (requires frequent reaching and handling and occasional fingering); DOT § 753.687-038 (requires constant reaching and handling and frequent fingering); and DOT § 525.687-074 (requires constant reaching and handling and occasional fingering).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. The ALJ's RFC determination must be based on all relevant evidence in the record, including medical records, observations of treating physicians and others, limitations resulting from factors such as pain, and the Claimant's own descriptions of her limitations. *Id*. § 404.1545(a)(3); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) and *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). In assessing RFC, the ALJ must consider limitations resulting from all an individual's impairments, even those found to be non-severe. *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, (S.S.A. 1996) 1996 WL 37418, *5.

Although the Plaintiff cites several records to support her allegation that Cole's mental impairments were disabling, she is essentially asking the Court to reweigh the evidence in his favor, which we may not do. *See Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022). She does point to Dr. Ott's statements that Cole was hospitalized for one week in 2013 after threatening someone with a gun and his 16-year history of outpatient mental health with minimal change in his symptoms, but she has failed to show how this supports Cole's application for benefits. (ECF No. 11, pp. 506-515). As previously mentioned, his alleged onset date was September 2014. Thus, a reference to a hospitalization that occurred in 2013 is of little value to the overall case. This is especially true given that the relevant evidence shows Cole's mental symptoms were responsive to both medication and therapy. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (internal quotation marks and citation omitted)); *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) ("Impairments that are controllable or amenable to treatment do not support a finding of total disability." (internal quotation marks and citation omitted)).

Moreover, the Plaintiff ignores Dr. Ott's actual examination findings, which showed Cole to be pleasant and cooperative with no aggression or hostility; normal speech, thought processes, and thought content; intact cognition, and no evidence of auditory or visual hallucinations. (ECF No. 11, pp. 506-515). Other than noting he was groggy from medication and not very focused, Dr. Ott assessed no limitations, including social restrictions. Nonetheless, the Plaintiff avers that Cole's report to Dr. Ott that he did not have major conflicts with others was the result of his limited social contact with others, rather than an admission that he gets along well with others. Unfortunately, even accepting her argument as true, there is no evidence that Cole's social restrictions extended beyond the ALJ's limitation to incidental social interaction. As previously noted, the record indicates he was able to assist others in working on vehicles, which he described as an outlet. And he reported no difficulties getting along with these men. His only issues appeared to have been with his partner.

The Plaintiff has also failed to show how Cole's April 2017 report to his therapist that his partner called the police on him for allegedly kidnapping their child supports mental disability. (ECF No. 11, pp. 606-610, 627-628). She called the police because Cole left the home with their son following an argument and was ultimately charged with filing a false police report. Evidence indicates that Cole was trying to work things out with his partner at that time. Thus, the record supports the ALJ's determination that Plaintiff could perform work where social interaction is incidental to the work performed.

It is also significant to note that the ALJ's RFC determination is supported by the consultative examinations of Dr. Westbrook and Dr. Ott, as well as the assessments of the state agency physicians. (ECF No. 11, pp. 519-523). The Plaintiff has not challenged the ALJ's determination that these assessments were persuasive. *See Vandenboom v. Barnhart*, 421 F.3d

15

745, 750 (8th Cir. 2005) (undeveloped argument waived).  And, although Dr. Westbrook noted a decreased range of motion in Cole's right MP joints, no functional limitations were documented. The state agency experts agreed, concluding Cole could perform light work without the need for manipulative restrictions.  (ECF No. 519-523).  His reported activities further undermine the Plaintiff's claim that manipulative limitations were required. *See Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (substantial evidence, including findings on physical examinations, examiner's report, and claimant's daily activities, supported ALJ's RFC determination).

Plaintiff has also not cited any evidence that Cole's obesity, which the ALJ found severe at step two, warranted RFC limitations beyond light work.  The ALJ explained that while she found Cole's obesity severe, "it is not so limiting as to prevent the performance of work tasks within the residual functional capacity as set out below."  (ECF No. 11, p. 20).  She correctly observed that his body mass index ("BMI") remained consistent throughout the record and did not interfere with his ability to enjoy activities such as hunting and riding 4-wheelers, nor did it prevent him from working on vehicles.  In fact, none of his treating providers restricted his activities or opined that he was unable to work due to obesity.  Thus, we find no error in the ALJ's treatment of Cole's obesity, utilizing it as further justification to limit him to light work.

Finally, Plaintiff contends that the ALJ incorrectly characterized Cole as a "younger individual" on his date last insured, noting that he subsequently changed age categories to "closely approaching advanced age."  (ECF No. 11, pp. 29).  This, however, appears to be a typographical error, as the ALJ correctly noted Cole was 50 years old, which is within the "closely approaching advanced age" category, on his DLI.  (*Id*.).  The ALJ also referenced Grid rule 202.21 (younger individual), as well as 202.14 (individual closely approaching advanced age), covering his proper

16

age category. (*Id*.). Therefore, we find the error to be harmless. And, the Plaintiff admits that this typographical error, standing alone, was indeed harmless.

Due to Cole's death in 2020, the Plaintiff urges this Court to reverse and award benefits in this case, to the benefit of Cole's surviving minor child. We note, however, that Cole's death was seemingly unrelated to the impairments upon which he based his DIB application. His cause of death is listed as lobar pneumonia with methamphetamine intoxication, obesity, and cardiomegaly noted as contributing factors. (ECF No. 11, pp. 887-888). There is no indication that the two were connected. Therefore, while we are saddened for the loss suffered by Cole's minor child, a reversal and award of benefits is not justified in this case, as we find substantial evidence to support the ALJ's RFC determination.

### IV.    Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the ALJ's decision be affirmed, and that the Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of August 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE